## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MYLAN PHARMACEUTICALS INC., <br><br> *Plaintiff*, <br><br> v. <br><br> TEVA PHARMACEUTICALS INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., TEVA NEUROSCIENCE, INC., and TEVA SALES & MARKETING, INC., <br><br> *Defendants*. | Civil Action No. 2:21-cv-13087 (JXN)(JSA) |

**PLAINTIFF MYLAN PHARMACEUTICALS INC.'S OBJECTION TO SPECIAL MASTER HOCHBERG'S REPORT AND RECOMMENDATION REGARDING CERTAIN DISCOVERY DISPUTES**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II.  BACKGROUND .................................................................................................1

III.  LEGAL STANDARD...........................................................................................2

IV.  ARGUMENT.......................................................................................................3

    A.  Discovery Into Mylan's Lobbying Activities Is Irrelevant......................................3

    B.  Understanding the Existing Regulatory Framework Does Not Require Discovery Into Mylan's Lobbying Activities ............................................................4

    C.  First Amendment Implications Militate Against Discovery...................................6

V.  CONCLUSION....................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Campbell v. Pa. Sch. Bds. Ass'n*,
    2018 WL 3092292 (E.D. Pa. June 19, 2018) ...................................................................6

*Fraternal Ord. of Police Pennsylvania Lodge v. Twp. of Springfield*,
    668 F. Supp. 3d 375 (E.D. Pa. 2023) ...........................................................................6

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2020 WL 6887885 (E.D. Pa. Nov. 24, 2020) .........................................................5

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    622 F. Supp. 3d 22 (E.D. Pa. 2022) ...........................................................................5

*Kaul v. Christie*,
    372 F. Supp. 3d 206 (D.N.J. 2019) ............................................................................6

*Mariana v. Fisher*,
    338 F.3d 189 (3d Cir. 2003) .......................................................................................6

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2010) ...................................................................................6

*Smith v. Life Invs. Ins. Co. of Am.*,
    2009 WL 2045197 (W.D. Pa. July 9, 2009) .............................................................4

*Taliaferro v. Darby Twp. Zoning Bd.*,
    2008 WL 2078992 (E.D. Pa. May 15, 2008) ...........................................................7

*Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of Canada*,
    2020 WL 7768405 (D.N.J. Dec. 30, 2020) ..............................................................2

*Verizon Commc'ns., Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ...............................................................................................4, 5

*York Grp., Inc. v. Pontone*,
    2012 WL 12895760 (W.D. Pa. 2012) .......................................................................3

### RULES

Fed. R. Civ. P. 26 ...............................................................................................................3, 6

Fed. R. Civ. P. 53(f) ...........................................................................................................1, 2

Pursuant to Rule 53(f) of the Federal Rules of Civil Procedure and the August 21, 2023, Order Appointing Special Master Hochberg (Dkt. 128), Plaintiff Mylan Pharmaceuticals Inc. ("Mylan") respectfully objects to a single aspect of the December 8, 2025, Report and Recommendation of Special Master Hon. Faith S. Hochberg Regarding Discovery Disputes. Dkt. 200 (hereinafter, "R&R"). Mylan does not object to the R&R's holdings regarding the 27 other discovery disputes raised by Defendants Teva Pharmaceuticals Industries Ltd., Teva Pharmaceuticals USA, Inc., Teva Neuroscience, and Teva Sales & Marketing, Inc. (together, "Teva").

## I.      INTRODUCTION

Mylan objects to the R&R in only one respect: its ruling that Mylan designate a corporate witness "to testify to efforts by Mylan to lobby federal agencies, and/or members of Congress, concerning formulary placement and rebates between 2018 and present day." R&R at 5. Such testimony bears no relevance to the claims and defenses in this litigation, and Teva's demand is designed to confuse the factfinder and harass Mylan. Moreover, Mylan's lobbying efforts are protected First Amendment activity that cannot be used against Mylan as part of Teva's defenses.

## II.     BACKGROUND

On November 7, 2025, Teva moved to compel Mylan to provide certain discovery responses, including, *inter alia*, that Mylan designate a corporate 30(b)(6) witness on its Topic No. 22:

> Any actions You took advocating for legal, regulatory, or policy changes that could impact Your GA products and the sale of and/or competition for GA products in any way, including but not limited to submissions You made, meetings you attended, or other actions You look (sic) with respect to federal agencies and/or representatives of the United States Congress in 2018 or otherwise concerning, among other things: a. Policies concerning the formulary placement and/or tier status of brand drugs and/or generic drugs; b. The legal right and/or ability of manufacturers to offer rebates on brand products, including after the approval of generics of those products; and c. Coverage and/or reimbursement for products

-1-

under Medicare Part D, including but not limited patient out-ot-pocket (sic) expenses and manufacturer payments during the "donut hole" and catastrophic coverage phase.

Dkt. 202-3 at 91. Teva argued, in part, that Mylan engaged in lobbying efforts to change the overall pharmaceutical regulatory scheme so as to avoid competing on price,[1] or otherwise to influence competition with Teva, making Mylan's lobbying activities relevant to the merits of Mylan's claims and to Teva's defenses. Dkt. 202-2 at 5.

On December 8, 2025, Special Master Hochberg issued an R&R regarding the discovery disputes raised by Teva, alternatively granting and denying the relief Teva had requested. As to the lobbying issue, Special Master Hochberg recognized that Topic No. 22 was "quite broad," and declined to order that Mylan designate a witness to testify to each aspect of the Topic as drafted. R&R at 5. However, Special Master Hochberg stated, without further explanation or citation to the record, that "the topics of formulary placement and rebates are directly relevant to the issues in this case," and so recommended that Mylan be compelled to designate a witness to testify to "efforts by Mylan to lobby federal agencies, and/or members of Congress, concerning formulary placement and rebates between 2018 and present day." *Id.*

Mylan challenges the R&R only as it relates to Topic No. 22.

## III.    LEGAL STANDARD

The reviewing court must decide objections to the Special Master's factual findings and legal conclusions under a *de novo* standard of review, Fed. R. Civ. P. 53(f)(3)-(4), meaning the court "accords no deference to any prior resolution of the same controversy." *Valeant Pharms.*

---

[1] To the extent that Mylan engaged in lobbying activity regarding the regulatory framework, Mylan does not concede that the activity was an attempt to avoid competing on price.

*Int'l, Inc. v. AIG Ins. Co. of Canada*, 2020 WL 7768405, at *4 (D.N.J. Dec. 30, 2020) (citation omitted).

## IV.    ARGUMENT

### A.    Discovery Into Mylan's Lobbying Activities Is Irrelevant

Mylan's lobbying activities, even those relating to formulary placement and rebates, have no bearing on any of the claims and defenses in dispute. Mylan's claims arise from a multi-faceted anticompetitive scheme by Teva to illegally restrict the market for its Copaxone pharmaceutical product and block approval and uptake of Mylan's generic alternative. Dkt. 1 ¶ 6. While Mylan's allegations encompass Teva's conduct regarding formulary placement and rebates relating to Copaxone, including that Teva maintained high prices for payers and consumers by providing rebates to pharmacy benefit managers and specialty pharmacies to block Mylan (*id.*), there is no relationship between that conduct by Teva and any policies Mylan may have pressed the federal government to adopt. Just because "the topics of formulary placement and rebates are directly relevant to the issues in this case," the sole basis for Special Master Hochberg's recommendation relating to Topic No. 22, does not make Mylan's general lobbying activities regarding rebates and formularies relevant to the litigation because, again, those efforts had no meaningful connection to Teva, or the conduct Mylan alleges Teva committed in this litigation.

There is simply no nexus between Mylan's lobbying activities on the one hand, and Teva's illegal conduct regarding formulary placement and rebates on the other, to require Mylan to provide this testimony. Besides the conclusory statement that Topic 22 is relevant, Teva has not cited any record evidence or case law, nor does the R&R rely on any, to satisfy its burden to establish relevance under Rule 26. *See, e.g., York Grp., Inc. v. Pontone*, 2012 WL 12895760 at *2 (W.D. Pa. 2012) (denying a motion to compel an answer to an interrogatory because "the information being sought [] is too attenuated from the Counterclaims and potential defenses to

-3-

those claims to be relevant."); *see also Smith v. Life Invs. Ins. Co. of Am.*, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009) (denying motion to compel of lobbying documents because "[w]hatever tangential relevance lobbying documents might have is outweighed by the burden of searching for and producing such documents.").

**B.    Understanding the Existing Regulatory Framework Does Not Require Discovery Into Mylan's Lobbying Activities**

Teva's request for this testimony is no more than a blatant attempt to use Mylan's lobbying efforts to create a distraction from Teva's conduct in this case and is designed to harass Mylan. Teva previously argued that testimony regarding Topic No. 22 was necessary to reveal "what that [existing regulatory] framework is" and "Mylan's understanding of how it allegedly experiences harm under that framework . . . ." Dkt. 202-2 at 5 (citing *Verizon Commc'ns., Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004)). The R&R did not reference this argument. Further, Teva's position rests on a faulty foundation: Teva misrepresents the holding of *Trinko* and neglects Third Circuit authority on the proper means to understand an existing regulatory framework.

*Trinko* discusses the relevance of an *existing* regulatory framework as part of the overall "economic context" in which the antitrust claim arises but says nothing about how testimony regarding lobbying efforts is relevant to this "economic context." *See Trinko*, 540 U.S. at 411. ("Antitrust analysis must always be attuned to the *particular structure* and circumstances of the industry at issue. Part of that attention to economic context is an awareness of the significance of regulation. As we have noted, 'careful account must be taken of the pervasive federal and state regulation characteristic of the industry.'") (emphasis added) (citation omitted). *Trinko* was not concerned with the regulatory framework as either the plaintiff or defendant would have it, but rather "the distinctive economic and legal setting of the regulated industry" as it was. *Trinko,* 540

U.S. at 411 (2004) (internal citation omitted). There, the Court was concerned with understanding the "existence of a regulatory structure designed to deter and remedy anticompetitive harm." *Id*. at 412.

Moreover, Third Circuit authority recognizes that discovery into a party's lobbying activities is not the best way to understand a regulatory framework's impact. In *Suboxone*, the court found that looking at the existing regulatory framework, comprised of agency rules, advisory opinions, federal and state statutes, licensing requirements, and the like, was the best way to understand the economic and legal setting of an industry. *See e.g., In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 622 F. Supp. 3d 22, 70 (E.D. Pa. 2022) ("Part of that attention to economic context is an awareness of the significance of regulation. Therefore, I must look to the FDA's marketing rules…") (internal quotation marks and citation omitted). Even to the extent the regulatory context is needed in this case, such information is more properly covered by expert opinions. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2020 WL 6887885, at *45 (E.D. Pa. Nov. 24, 2020) (discussing courts permitting expert testimony regarding FDA regulations). Discovery into a party's lobbying efforts, which focus on policies not yet adopted, does not provide an appropriate vehicle.

Teva's pretextual argument that Mylan's lobbying efforts will reveal how it "experiences harm" under the existing regulatory regime similarly fail. Teva does not cite a single case supporting their argument that lobbying efforts of a party were relevant to understanding how it experiences harm under a regulatory framework and should be the subject of 30(b)(6) testimony. Moreover, Teva will already be receiving ample fact and expert discovery regarding Mylan's claimed harms. Having stated no proper purpose for such requested testimony, it can only be that

-5-

Teva intends to use such testimony to confuse the factfinder by introducing evidence of Mylan's past lobbying efforts, which is clearly improper.

### C.    First Amendment Implications Militate Against Discovery

Discovery into Mylan's lobbying activities is further improper because that conduct falls squarely within the scope of Mylan's core First Amendment protections. Teva previously argued that "Mylan's lobbying efforts to change the regulatory scheme to avoid competing on price, or otherwise to influence competition with Teva, are directly relevant to the merits of Mylan's claims and to Teva's defenses." Dkt. 202-2 at 5. However, such an argument runs afoul of the First Amendment, and Teva has not shown that the material is "highly relevant." *See e.g., Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010) ("the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable."); *see also Fraternal Ord. of Police Pennsylvania Lodge v. Twp. of Springfield*, 668 F. Supp. 3d 375, 385-87 (E.D. Pa. 2023) (for discovery implicating First Amendment right to associate, the party seeking the discovery must show that the information sought is highly relevant).

Further, the R&R is contrary to the spirit of the *Noerr-Pennington* doctrine, which "provides broad immunity from liability to those who petition the government . . . ." *Kaul v. Christie*, 372 F. Supp. 3d 206, 253 (D.N.J. 2019) (citation omitted); *see also Campbell v. Pa. Sch. Bds. Ass'n*, 2018 WL 3092292, at *4 (E.D. Pa. June 19, 2018) (citing *Mariana v. Fisher*, 338 F.3d 189, 199 (3d Cir. 2003) (explaining that the *Noerr-Pennington* doctrine "immunizes petitioning directed at any branch of government, including the executive, legislative, judicial, and administrative agencies."). Indeed, "[t]he First Amendment does not 'play favorites.' Parties on

-6-

both sides of such a dispute are entitled to the protections of the First Amendment." *Taliaferro v. Darby Twp. Zoning Bd.*, 2008 WL 2078992, at *7 (E.D. Pa. May 15, 2008).

Teva's improper attempt to use Mylan's petitioning activity as part of its defenses impinges on Mylan's First Amendment rights to petition the government, and is an unfair effort by Teva to use the First Amendment as both a sword (here) and a shield (in arguing its petitioning conduct cannot give rise to liability). Dkt. 55-1 at 23-28 (Teva arguing in its motion to dismiss that its petitioning conduct was protected by *Noerr-Pennington*). Allowing Teva to seek testimony related to the protected conduct with the express purpose of using such testimony as part of Teva's defenses would punish Mylan for its petitioning conduct. Dkt 202-2 ("Mylan's lobbying efforts to change the regulatory scheme to avoid competing on price, or otherwise to influence competition with Teva, are directly relevant to the merits of . . . Teva's defenses"). Permitting such use of testimony not only unfairly penalizes Mylan for protected conduct but would substantially chill petitioning activity for fear that the conduct would ultimately harm the petitioner. This is precisely the First Amendment interest the *Noerr-Pennington* doctrine is intended to protect, and given that no exception applies here, the Court should not condone this improper use of discovery.

## V.      CONCLUSION

For the aforementioned reasons, Mylan's objection should be sustained, and the Special Master's Report and Recommendation should be overruled insofar as it recommends Mylan designate a 30(b)(6) witness to testify to efforts by Mylan to lobby federal agencies, and/or members of Congress, concerning formulary placement and rebates between 2018 and the present day.

-8-

Dated: January 7, 2026

Respectfully submitted,

*/s Jakob B. Halpern*

Arnold B. Calmann
Jakob B. Halpern
SAIBER LLC
7 Giralda Farms, Suite 360
Madison, New Jersey 07940
Telephone: (973) 622-3333
Facsimile: (973) 622-3349

Eli B. Richlin
Stuart A. Williams
Michael S. Sommer
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10025
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Seth C. Silber
Brendan J. Coffman
Franklin Rubinstein
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K Street NW, 5th Floor
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899

*Attorneys for Plaintiff*